IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


NESS & CAMPBELL CRANE, INC.,

No. 3:17-cv-01865-HZ

Plaintiff,

OPINION & ORDER

v.

KURT O. KLEPPE,

Defendant.


John F. McGrory, Jr.
Kaley L. Fendall
DAVIS WRIGHT TREMAINE, LLP
1300 SW Fifth Avenue, Suite 2400
Portland, OR 97201

     Attorneys for Plaintiff


Timothy J. Resch
SAMUELS YOELIN KANTOR, LLP
111 SW Fifth Avenue, Suite 3800
Portland, OR 97204

     Attorney for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Ness & Campbell Crane, Inc., brings three claims against Defendant Kurt O. Kleppe. First, Plaintiff brings a breach of contract claim for an alleged breach of the parties' Shareholder Agreement. Second, Plaintiff brings two claims for declaratory relief seeking a declaration and determination of Defendant's breach of the Shareholder Agreement as well as Plaintiff's rights and obligations under the Shareholder Agreement, Redemption Agreement, and Subordinated Promissory Note. Defendant moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court denies in part and grants in part Defendant's Motion to Dismiss.

## BACKGROUND

Defendant is a former shareholder and Vice President of Plaintiff. Notice of Removal, Ex. 1 Complaint ("Compl.") ¶¶ 10, 12, ECF 1-1. Around the time of Plaintiff's formation in August of 2008, Plaintiff and Defendant entered into a Shareholder Agreement that governed the terms of their relationship. Compl. ¶¶ 12, 14; Compl. Ex. 1 at 1 ("Shareholder Agreement"). In addition to providing terms for any sale of stock in the event of an employee's voluntary termination, Shareholder Agreement ¶ 6.2, Defendant agreed to abide by three non-solicitation and non-competition provisions described in sections 13.1(a)–(c) of the Shareholder Agreement "during the 3 years following any sale of his shares." Compl. ¶ 12. Generally, Defendant agreed (1) not to engage in any business that competes with Plaintiff or provides services related to crane operation and rental within a 300 mile radius of Portland, OR, and Seattle, WA; (2) not to solicit business from any of Plaintiff's customers, cause its customers to cease business with Plaintiff, or cause its customers to change their relationship with Plaintiff; and (3) not to solicit or induce any employees to leave their employment with Plaintiff. Compl. ¶¶ 12(a)–(c).

On November 6, 2015, Defendant resigned from his position as Vice President and entered into an agreement to sell his shares of stock in the company to Defendant pursuant to the terms of the Shareholder Agreement. Compl. ¶ 14. As part of this sale, the parties entered into a Redemption Agreement and Subordinated Promissory Note that governed the terms of the redemption. Compl. ¶ 14. The agreements provide that in exchange for Defendant's shares, Plaintiff would make annual payments in the amount of $186,928.26 between September 30, 2016 and September 30, 2020. Compl. ¶ 14. The Redemption Agreement also contains a release provision and integration clause central to the present dispute:

> **5.2     Release by Company**. Company, and each of its successors, assigns, affiliates, officers, directors, stockholders, agents, employees, consultants and attorneys does hereby and forever release, discharge, and acquit Stockholder and his successors assigns and spouse or domestic partner, from and against any and all claims, damages, liabilities, obligations, actions, and causes of action, whether sounding in tort, contract, equity or otherwise, whether known or unknown, whether suspected or unsuspected, and whether arising directly in favor of Company, or by way of assignment, subrogation, or indemnification held by Company.
>
> . . .
>
> **7.6     Entire Agreement; Modification.** This agreement constitutes the entire agreement among the parties, and supersedes all prior agreements and understandings, oral and written, with respect to its subject matter. No modification or amendment of this Agreement will be effective unless it is executed in writing by both parties.

Resch Decl., Ex. 1, ECF 5-1 ("Redemption Agreement").

After his resignation, Plaintiff alleges that Defendant went to work as the general manager of NW Tower Crane, a crane company in Des Moines, Washington, that had "consistently contracted with [Plaintiff]." Compl. ¶¶ 16–17. Since Defendant began working at NW Tower Crane, Plaintiff alleges that "NW Tower Crane has ceased contracting with Ness Campbell" and began using the services of one of its primary competitors. Compl. ¶ 18. Plaintiff further alleges that it has "lost approximately 20 employees" to this same competitor since

Defendant began working for NW Tower Crane. Compl. ¶ 20.  Plaintiff alleges that the cause of both the loss of NW Tower's business and its employee are either directly or indirectly attributable to Defendant. Compl. ¶¶ 19–20.

Plaintiff contends the actions above constitute a violation of the Shareholder Agreement, Compl. ¶¶ 23–25, which it claims survived Defendant's voluntary resignation in 2015. Compl. ¶ 15. Plaintiff accordingly filed this action in Multnomah County on November 2, 2017. Notice of Removal ¶ 1, ECF 1. Plaintiff seeks $2,500,000 in damages related to its breach of contract claim as well as declaratory relief, Compl. ¶¶ 25, 33, 41. Defendant removed this action to Federal Court on November 21, 2017, under this court's diversity jurisdiction, Notice of Removal, ¶¶ 4–5, and subsequently filed the present motion to dismiss, Def's Mot. Dismiss, ECF 4.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002).  To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[,]" meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  In other words, a complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]"  *Id.* at 679.

However, the court need not accept conclusory allegations as truthful. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint, and we do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations") (internal quotation marks, citation, and alterations omitted). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

## DISCUSSION

Plaintiff brings three claims against Defendant: (1) a breach of contract claim for an alleged breach of the Shareholder Agreement; (2) a claim for declaratory relief seeking a declaration that Defendant's acts constitute a breach of the Shareholder Agreement; and (3) a second claim for declaratory relief seeking a declaration that Defendant's breach of the Shareholder Agreement relieves Plaintiff of its payment obligations under the Shareholder Agreement, Redemption Agreement, and Subordinated Promissory Note. Defendant moves to dismiss all three claims. The Redemption Agreement's release provision is ambiguous, therefore, the Court denies Defendant's motion as to the breach of contract claim. However, the Court grants Defendant's motion as to the claims for declaratory relief because Plaintiff's first claim for declaratory relief is duplicative of the breach of contract claim and Plaintiff fails to state a plausible claim for relief under the second claim.

# I.     Claim 1: Breach of Contract

Defendant moves to dismiss Plaintiff's breach of contract claim on the grounds that Plaintiff released Defendant from any claims under the Shareholder Agreement when the parties entered into the Redemption Agreement as part of the sale of Plaintiff's stock. Def. Mot. 4.[1]  The Court must interpret the Redemption Agreement pursuant to Oregon law. Redemption Agreement ¶ 7.1 ("This Agreement shall be . . . construed . . . under the laws of the State of Oregon."); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally.").  Release provisions are subject to the rules of contract construction and interpretation. *See Ristau v. Wescold, Inc.,* 318 Or. 383, 387, 868 P.2d 1331, 1333 (1994). Contract construction is a question of law for the court. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 469, 836 P.2d 703, 706 (1992). The goal of contract construction is to ascertain the parties' intent. *Totten v. N.Y. Life Ins. Co.,* 298 Or. 765, 770, 696 P.2d 1082, 1086 (1985).

Oregon courts follow a three-step inquiry in interpreting the provisions of a contract. *Yogman v. Parrott*, 325 Or. 358, 361, 937 P.2d 1019, 1021 (1997). The first step is to examine the text of the disputed provision, in the context of the document as a whole. *Id*. If the disputed provision is clear, the inquiry ends. *Id*.

> When considering a written contractual provision, the court's first inquiry is what the words of the contract say . . . . To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in question. The meaning of disputed text in that context is then determined. In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. In the absence of an ambiguity, the court construes the words of a contract as a matter of law.

---

[1] Defendant asks the Court to incorporate the Redemption Agreement as part of the Complaint under the doctrine of incorporation by reference. Plaintiff does not object.

*Id.* (internal quotation marks omitted) (ellipsis in *Yogman*).

A "contractual provision is ambiguous if its wording can, in context, reasonably be given more than one plausible interpretation." *Williams v. RJ Reynolds Tobacco Co*., 351 Or. 368, 379, 271 P.3d 103 (2011); *see also Hoffman Constr*., 313 Or. at 470, 836 P.2d at 706 (for term to be ambiguous, there must be more than a showing of two plausible interpretations; a term is ambiguous only if two or more plausible interpretations of that term withstand scrutiny, i.e., continue to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the contract and the broader context of the contract as a whole); *Edwards v. Merle West Med. Ctr.*, 147 Or. App. 71, 77, 935 P.2d 442, 445 (1997) ("[a] contract provision is ambiguous if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person.").

If the contractual provision is ambiguous, the court generally proceeds to the second step of the interpretation analysis: examining extrinsic evidence of the parties' intent. *Yogman*, 325 Or. at 363, 937 P.2d at 1022. The court is to pursue the parties' intent if possible. *Id*. at 364, 937 P.2d at 1022 (citing O.R.S. 42.240). If, after considering the relevant extrinsic evidence, the court has not resolved the ambiguity, the court proceeds to the third step of the analysis in which the court relies on appropriate maxims of construction. *Id*. However, when considering a motion to dismiss, the analysis ends if the provision is ambiguous. *See Arnett v. Bank of America*, 874 F. Supp. 2d 1021, 1031 (D. Or. 2012) ("If the relevant provisions when read together . . . are ambiguous, and there exists at least one plausible interpretation where [the defendant's] conduct constitutes a breach, dismissal of the . . . breach of contract claim at this stage in the proceedings is inappropriate.").

In this case, Defendant alleges that there is only one "plausible, sensible, reasonable interpretation" of the release provision in the Redemption Agreement: "plaintiff released defendant Kleppe of all obligations arising under the previously-executed Shareholder Agreement, including its non-compete/non-solicitation terms." Def. Reply 2, ECF 9. In support of this argument, Defendant cites (1) the release provision in Section 5.2, which relieved defendant of "any and all . . . obligations;" (2) the absence of any exclusions in the release provision; and (3) the integration clause, which states that it "supersedes all prior agreements . . . with respect to its subject matter." Def. Mot. 7. Defendant argues that these terms—all "unambiguous on their face"—indicate that the Plaintiff released Defendant from all prior obligations and that the Redemption Agreement superseded the Shareholder Agreement. *Id*. Plaintiff responds by offering an alternative interpretation of the release provision: "that it only releases those 'claims, damages, liabilities, obligations, actions, and causes of actions' relating to [Defendant's] sale and [Plaintiff's] redemption of the shares formerly held by [Defendant]."[2] Pl. Opp. 8, ECF 7. In support of its argument, Plaintiff cites (1) the absence of any reference to the Shareholder Agreement in the release provision, (2) the purpose of the Redemption Agreement as set forth in the recital provisions, and (3) the language of the integration clause, which limited

---

[2] The Plaintiff also refers to the terms of the Shareholder Agreement in order to show that the terms of the Redemption Agreement are ambiguous. Pl. Opp. 8–11. While it is referred to as an "ancillary agreement," it is unclear the extent to which the terms of the Shareholder Agreement are incorporated into the Redemption Agreement. The Shareholder Agreement, therefore, may be extrinsic to the Redemption Agreement. However, courts interpreting contracts under Oregon Law in the Ninth Circuit cannot use extrinsic evidence to determine—at the first step of the analysis—whether a particular term or provision in a contract is ambiguous. There is some tension in the Oregon cases as to whether extrinsic evidence may be examined to determine if there is an ambiguity in the first place, in addition to being used to determine the parties' intent once the court concludes, from text and context, that there is an ambiguity. *Compare Yogman,* 325 Or. at 361, 937 P.2d at 1019 (ambiguity determined by text and context) *with Abercrombie v. Hayden Corp.*, 320 Or. 279, 292, 883 P.2d 845, 852 (1994) (in deciding whether an ambiguity exists, the court is not limited to mere text and context, but may consider parol and other evidence); *see also Oregon Trail Elec. Consumers Coop., Inc. v. Co-Gen Co.,* 168 Or. App. 466, 476 n.8, 7 P.3d 594, 601 n.8 (2000) (noting potential question of whether *Abercrombie* survives *Yogman*), *rev. den.*, 332 Or. 137, 27 P.3d 1043 (2001). The Ninth Circuit has answered the question for the district courts within its boundaries. In a 2000 case, the court concluded that *Yogman* implicitly overruled *Abercrombie* and thus, extrinsic evidence is not properly used to determine if an ambiguity exists, but is available only as an aid in determining the parties' intent once the court has determined, from text and context, that there is an ambiguity. *Webb v. Nat'l Un. Fire Ins. Co. of Pittsburgh*, 207 F.3d 579, 581-82 (9th Cir. 2000).

the effect of the Redemption Agreement to superseding agreements of the "same subject matter," or the redemption of Defendant's shares. Pl. Opp. 5–6.

Defendant relies on the Oregon Supreme Court's holding in *Ristau v. Wescold, Inc.*, that "a general release from all claims and demands is sufficient to bar a specific claim, unless the claim is excepted from the release agreement." 318 Or. 383, 389, 868 P.2d 1331, 1335 (1994). There, the Oregon Supreme Court found that a release agreement barred the plaintiff from bringing a claim for security fraud under a contemporaneously executed stock sale agreement. *Id.* at 385, 868 P.2d at 1332. First, the court found that the release agreement was unambiguous and enforceable according to its terms. *Id.* at 387, 868 P.2d at 1334. The agreement barred "any and all claims, demands, rights, damages, expenses, loss of compensation, suits and causes of action, whether known or unknown, now existing" except for certain claims arising out of expressly listed agreements. *Id.* at 385–386, 868 P.2d at 1332–33. Next, because Plaintiff's claim arose out of a stock sale agreement executed contemporaneously with the release agreement, it was "now existing" and barred under the terms of the release agreement. *Id.* at 388, 868 P.2d at 1334. The court further noted that the claim did not arise out of an obligation owed under any of the agreements expressly excluded from the release. *Id.*

While, as emphasized in *Ristau*, a general release will be construed to bar specific claims, Oregon courts have also emphasized the importance of the scope and context of a release in interpreting these provisions. *See Glickman v. Weston*, 140 Or. 117, 126–27, 11 P.2d 281, 12 P.2d 1005 (1932) (A release agreement "must be construed by its contents as a whole in order to give it the construction the parties intended."). In *Patterson v. American Medical Systems, Inc.*, the Court of Appeals found that the scope of a general release provision contained in a products liability settlement was ambiguous because it could be limited by the scope of the agreement.

141 Or. App. 50, 54–55, 916 P.2d 881, 883 (1996). There, the court was asked to determine

whether a settlement agreement from a prior products liability action waived the plaintiff's

present products liability claim. *Id.* at 52, 916 P.2d at 881.  In the agreement, the introductory

recital paragraph indicated that there was pending litigation and that the parties wished to "settle

their differences and any and all other claims." *Id.* at 54, 916 P.2d at 883. Subsequent paragraphs

stated that "[the plaintiff] . . . accepted the settlement amount in full satisfaction of all claims 'of

every nature and kind whatsoever, known or unknown, suspected or unsuspected, past, present or

future' that were 'in any way related'" to his use of the defendant's product.  *Id.* The court held

that, when read together "the paragraphs . . . are reasonably susceptible to more than one

meaning." *Id.* Specifically, it found that the release could refer to either only the existing claims

included in the recital or, alternatively, any future products purchased from the defendant. *Id.*

Looking to extrinsic evidence, the court also noted that the product at issue was not in use at the

time of the settlement and "was not within the contemplation of the parties." *Id.* at 54–55, 916

P.2d at 883. Accordingly, the Court found that the terms were ambiguous and inappropriate for

summary judgment. *Id.* at 55, 916 P.2d at 883. In *Ristau,* by contrast, the general release

constituted a separate and independent release agreement signed by both parties and expressly

acknowledged the contemporaneous agreements affected by the release. *See* 318 Or. at 385–86,

868 P.2d at 1333–34.

In light of this case law and viewing the Redemption Agreement as a whole, the Court

finds that the release provision in this case is ambiguous. On the one hand, Defendant's

interpretation of the release provision is a reasonable one. Here, like the release in *Ristau*, the

language of the release is broad: "[Plaintiff] . . . does hereby forever release, discharge, and

acquit [Defendant] . . . from and against any and all claims [sic] damages, liabilities, obligations,

actions and causes of action, whether sounding in tort, contract, equity or otherwise, whether known or unknown, [and] whether suspected or unsuspected." Redemption Agreement ¶ 5.2. It contains no specific exclusions. And the integration clause states that the Redemption Agreement "supersedes all prior agreements and understandings, oral and written, with respect to its subject matter." *Id.* at ¶ 7.6. Because both agreements cover some of the same subject matter, it reasonably follows that the Redemption Agreement may supersede the Shareholder Agreement.

On the other hand, Plaintiff's interpretation is also reasonable. As in *Patterson*, the Redemption Agreement here contains a recital section that suggests the purpose of the agreement was to set out the terms and conditions for the redemption of Defendant's stock: "Shareholder is resigning as an employee of the Company and desires that the Company redeem the Redeemed Stock and the Company is willing to redeem the Redeemed stock on the terms and conditions set forth herein." Redemption Agreement at 1. Accordingly, the "subject matter" of the contract, as used in the integration clause, may be limited to this stock redemption. *Yogman,* 325 Or. at 361, 937 P.2d at 1021 (To determine what the words of a contract say "the court looks at the four corners of a written document, and considers the contract as a whole with the emphasis on the provision or provisions in question."). Thus, only agreements related to the stock redemption— and not the non-compete or non-solicitation provisions at issue here—would be superseded by the Redemption Agreement. And, like in *Patterson*, the recital section could reasonably limit the release provision to claims arising out of the Redemption Agreement or related to this sale of stock. It is, therefore, unclear whether the Redemption Agreement was intended to release Defendant from his obligations under all prior agreements.

As these provisions are capable of more than one "sensible and reasonable interpretation," they are ambiguous. *See Edwards v. Merle West Med. Ctr.*, 147 Or. App. 71, 77,

935 P.2d 442, 445 (1997) ("[a] contract provision is ambiguous if . . . it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person."). Accordingly, the Court must deny Defendant's motion to dismiss as to Plaintiff's first claim for relief. *Arnett*, 874 F. Supp. 2d at 1031 ("If the relevant provisions when read together . . . are ambiguous . . . dismissal of [the plaintiff's] breach of contract claim at this stage of the proceedings is inappropriate.").

## II.      Claims 2 and 3: Declaratory Relief

In its second and third claims, Plaintiff requests declaratory relief. Under Claim 2, Plaintiff requests a determination and declaration by the Court that Defendant's acts constitute a breach of the non-solicitation and non-competition provisions of the Shareholder Agreement. Compl. ¶¶ 29–34. Under Claim 3, Plaintiff requests another determination and declaration from the Court that Plaintiff is relieved of its payment obligations for Defendant's stock under the Shareholder Agreement, Redemption Agreement, and Subordinated Promissory Note because of Defendant's breach of the Shareholder Agreement. Compl. ¶¶ 35–42. Defendant moves to dismiss both claims on the grounds that (1) Claim 2 is duplicative of Claim 1 and (2) Plaintiff fails to state a plausible claim for relief under Claim 3.

In actions brought under the Court's diversity jurisdiction, the propriety of granting declaratory relief is governed by federal law. *See DeFeo v. Procter & Gamble Co.*, 831 F.Supp. 776, 779 (N.D. Cal. 1993) ("The propriety of granting declaratory relief in federal court is a procedural matter. Therefore, the Declaratory Judgment Act is implicated even in diversity cases. . . ."). The Declaratory Judgment Act authorizes district courts to declare the rights and other legal relations of parties in cases of "actual controversy within [their] jurisdiction," and grants the court discretion to entertain a suit for declaratory relief:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). "A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases 'brought by any interested party' involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so." *Seattle v. Audubon Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (citing 28 U.S.C. § 2201; 10A Wright & Miller, Federal Practice and Procedure, § 2751).

In the Ninth Circuit, courts engage in a two-part analysis to determine whether to grant the issuance of a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201. First, the Court must determine whether the plaintiff has established standing "by showing 'that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.'" *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 658 (9th Cir. 2002) (quoting *Western Mining Council v. Watt* 642 F.2d 618, 624 (9th Cir. 2002)); *see also Gov't Empee's Ins. v. Dizol* 133 F.3d 1220, 1223 (9th Cir. 1998) ("A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2, of the United States Constitution."). "Second, if there is a case or controversy within its jurisdiction, the court must decide whether to exercise that jurisdiction." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143–44 (9th Cir. 1994). It is within the discretion of the court to determine, at the second step, "whether to entertain declaratory judgments." *Id.* at 144 (citing 28 U.S.C. § 2201(a) (The court "may declare the rights . . . of any interested party.")). In doing so, "the district court 'must balance concerns of judicial

administration, comity, and fairness to the litigants.'" *Id.* (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)).

Plaintiff's second claim for relief fails because it is duplicative of its first claim for relief. A "separate declaratory relief claim should not be used . . . to determine identical issues subsumed within other claims." *Jensen v. Quality Loan Serv. Corp.,* 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (finding that the "resolution of [the plaintiff's] quiet title claim will necessarily determine 'who owns [the plaintiff's] Subject property'" making the declaratory relief claim "entirely duplicative" of the plaintiff's other claims); *see also Camillo v. Wash. Mut. Bank, F.A.*, No. 1:09–CV–1548 AWI SMS, 2009 WL 3614793, at *13 (E.D. Cal. Oct. 27, 2009) (dismissing declaratory relief claim as redundant where there was no reason to believe it would "resolve any issues aside from those already addressed by the substantive claims" in the case) (internal quotation marks omitted). Here, Plaintiff's claim for declaratory relief is duplicative of Plaintiff's first claim: Claim 1 seeks damages for breach of the non-solicitation and non-competition provisions of the Shareholder Agreement, and Claim 2 seeks a declaration that Defendant has breached those provisions of the Shareholder Agreement. In other words, resolution of the breach of contract claim will necessarily determine whether, as requested in the second claim, Defendant breached the contract. The Court, therefore, dismisses Plaintiff's second claim for relief. *See Fosmire v. Progressive Max. Ins. Co.*, No. C10-5291JLR, 2010 WL 3489595, at * 5 (W.D. Wash. Aug. 31, 2010) (dismissing a claim for declaratory relief regarding the defendant's obligations under a contract because it was duplicative of the plaintiff's breach of contract claim).

While Plaintiff's third claim for relief is not duplicative of the first, it also fails because Plaintiff not alleged sufficient facts upon which to base its requested declaratory relief. "[T]he

requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions." *Kam-Ko Bio-Pharm Trading Co. Ltd-Australia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (quoting 10B Wright & Miller, Federal Practice & Procedure § 2768). Here, Plaintiff seeks a declaration from the Court that Defendant's alleged breach of the Shareholder Agreement relieves Plaintiff of its duty to fulfill its payment obligations under the Shareholder Agreement, Redemption Agreement, and Subordinated Promissory Note. Compl. ¶ 41. Plaintiff is correct that a material breach of a contract by one party may excuse performance under that contract by the other party. Pl. Opp. 11–12 (citing *Wasserburger v. Am. Sci. Chem., Inc.*, 267 Or. 77, 82, 514 P.2d 1097, 1099 (1973) ("[A]s a general rule, . . . a breach or nonperformance of a promise by one party to a bilateral contract so material as to justify refusal of the other party to perform a contractual duty, discharges that duty.")). However, there are no facts or terms of the contract alleged that would suggest that Defendant's alleged material breach of the Shareholder Agreement would relieve Plaintiff of its payment obligations under the other contracts for the sale of his stock. Plaintiff merely "contends that, as a result of [Defendant's] material breach of the Shareholder Agreement, [it] is excused from any further payment obligations." Compl. ¶ 40. Plaintiff has, therefore, failed to state a plausible claim for relief under Claim 3.

Accordingly, Plaintiff's second and third claims for relief are dismissed. However, Plaintiff will be given leave to amend its complaint to adequately state a claim for relief under Claim 3. Fed. R. Civ. P. 15(a)(2) ("[T]he court should freely give leave [to amend] when justice so requires.").

///

///

## CONCLUSION

Defendant's Motion to Dismiss [4] is GRANTED in part and DENIED in part. Plaintiff is given 30 days to amend its complaint curing the deficiencies identified above.

IT IS SO ORDERED.

Dated this _____5_____ day of ~~March~~ APRIL, 2018.


MARCO A. HERNÁNDEZ
United States District Judge